## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER SMITH on behalf of himself and all others similarly situated, | No.:_____ |
| Plaintiff, | |
| v. | **COMPLAINT-- CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| CITIZENS & NORTHERN CORPORATION and CITIZENS & NORTHERN BANK, | |
| Defendants. | |

## **COMPLAINT – CLASS ACTION**

Plaintiff, Christopher Smith ("Plaintiff" or "Plaintiff Smith") brings this action individually and on behalf of all others similarly situated (the "Class") by and through his counsel of record, Troy M. Frederick, Esquire, Beth A. Frederick, Esquire and the Frederick Law Group, PLLC, Jonathan Shub, Esquire, and Kevin Laukaitis, Esquire and the Shub Law Firm, LLC, and Keith T. Vernon, Esquire, Andrew W. Knox, Esquire, and Kathleen M. Vermilion, Esquire and Timoney Knox LLP, and alleges as and for his Class Action Complaint against Citizens & Northern Corporation and Citizens & Northern Bank (collectively "Defendants" or "Bank") upon personal knowledge as to himself and his own acts, and as to all other matters

upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

## **INTRODUCTION**

1.      This is a proposed class action brought by Plaintiff on behalf of himself and other like customers of Defendants.

2.      At all times relevant hereto, Plaintiff and the Putative Class Members had savings accounts with Defendants.

3.      This action seeks to redress Defendants' unlawful, deceptive, and improper practices that have caused thousands of Pennsylvania and New York customers to pay unlawfully imposed banking fees.

4.      The federal government regulates savings accounts under, among other laws, 12 U.S.C. §§ 248(a), 248(c), 461. 601. 611, and 3105 and the implementing regulations found in 12 C.F.R. § 204.2 (hereinafter "Regulation D"). Regulation D defines savings accounts as those for which a bank has reserved the right to require a customer to provide seven (7) days notice prior to withdrawing money. The bank does not actually have to require such notice. Further, Regulation D requires banks to restrict the number of *convenient transfers* a customer can make from a savings account. 12 C.F.R. § 204.2(d). Regulation D mandates that banks charge customers a fee, or change the type of account, when a customer makes more than six (6) *convenient transfers* within a four (4) week statement period ("Transaction Limit").

2

Regulation D does not restrict inconvenient transfers, nor do inconvenient transfers count toward the six transaction limit. In addition, the Federal Reserve Board asserts that *inconvenient transfers* are unlimited. 12 C.F.R. § 204.2(d) and Compliance Guide to Small Entities, Regulation D: Reserve Requirements of Depository Institutions, Board of Governors of the Federal Reserve System, available at https://www.federalreserve.gov/supervisionreg/regdcg.htm, last updated on Jan. 4, 2018 (hereinafter "Guidance").

5.    Examples of *convenient transfers* are transfers to another account (including a transaction [checking] account) of the depositor at the same institution or to a third party by means of a preauthorized or automatic transfer, or telephonic (including data transmission) agreement, order or instruction, or by check, draft, debit card, or similar order made by the depositor and payable to third parties.

6.    *Inconvenient transfers* include transfers of funds from a savings account to another account of the same depositor at the same institution and withdrawals (payments directly to the depositor) from the savings account when such transfers or withdrawals are made by mail, messenger, automated teller machines (hereafter "ATM"), or in person or when such withdrawals are made by telephone (via check mailed to the depositor).

7.    Defendants have and continue to engage in unlawful banking practices by improperly counting *inconvenient transactions*, which pursuant to federal

regulations should be unlimited, toward Plaintiff's and the Putative Class's Transaction Limit from their savings accounts.

8.    Once Defendants' customers exceed the Transaction Limit on their savings accounts, Defendants charge them a $2.00 fee for each additional transaction, including charging customers for *inconvenient transactions,* which pursuant to federal regulations should be unlimited.

9.    Defendants omit from the account disclosures provided to their customers that they will be charged the additional $2.00 fee per transaction for *inconvenient transactions*.

10.    As such, Defendants unlawfully profit at the expense of their customers while they violate federal law and charge Plaintiff and putative Class Members improper fees. As a result, it is believed and therefore averred that, Defendants are fleecing their customers out of millions of dollars in unlawful banking fees.

11.    Plaintiff, on behalf of himself and the putative Class of similarly situated customers (defined below), seeks to end Defendants' unlawful practices and seeks redress for the improper fees Defendants charge as a result of their uniform practice of counting *inconvenient transfers* from their customers' savings accounts toward the Transaction Limit.

12.    This suit is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PS. § 201-1 *et seq*. and the common

4

law on behalf of a putative Class of customers who incurred at least one fee premised on unlawful transactions where the total transactions included at least one *inconvenient transfer*/withdrawal from their savings accounts with Defendants within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment that were not previously reversed, refunded, or returned at any time. It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, attorneys' fees, and the costs of this suit.

## THE PARTIES

13.    Plaintiff Christopher Smith is an adult individual and citizen of Pennsylvania who resides in Coudersport, Potter County, Pennsylvania.

14.    Defendant Citizens & Northern Corporation is a Pennsylvania corporation with its principal place of business located at 90-92 Main Street, P.O. Box 58, Wellsboro, Tioga County, Pennsylvania 16901.  Defendant is a publicly traded bank holding company who provides banking and lending services through its subsidiary, Defendant Citizens & Northern Bank.

15.    Defendant Citizens & Northern Bank is a Pennsylvania financial institution with its principal place of business located at 90-92 Main Street, P.O. Box 58, Wellsboro, Tioga County, Pennsylvania 16901.  Defendant was founded in 1864 and has grown by purchasing assets of other banks and merging with other banking systems.

5

1762474-1
1763183-1

16.    Upon information and belief, Defendant Citizens & Northern Corporation wholly owns Defendant Citizens & Northern Bank and together provide banking and other financial services through Defendant Citizens & Northern Bank.

17.    Defendants have 36 brick and mortar bank branches located throughout Pennsylvania and New York.

18.    At all times relevant hereto, Defendants were engaged in the business of marketing, advertising, and selling their banking services to customers in Pennsylvania and New York.

19.    Defendants tout that Citizens & Northern Bank is a "community friend for world class banking" that offers a wide range of personal and business banking services.  According to its website, Defendants have assets exceeding $1.2 billion dollars.[1]

## JURISDICTION AND VENUE

20.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).  The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous putative Class members who are citizens of states other than Defendants' states of citizenship.

---

[1] https://www.cnbankpa.com/About/Investor-Relations/C-N-Corporate-Profile (last visited July 20, 2021).

6

21.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1331.  The action arises under federal law.  The question of federal law is necessarily raised and is dispositive of the action, the parties dispute the interpretation of the federal regulation, the interpretation of the regulation is substantial to the federal system as it will determine regulation of the banking industry proactively, and exercise of jurisdiction over this matter will not interfere with the federal-state court balance.

22.    This Court has personal jurisdiction over Defendants in this matter. The acts and omissions giving rise to this action occurred in the state of Pennsylvania.  Defendants have been afforded due process because they have, at all times relevant to this matter, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed, and/or sold products and services, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Pennsylvania, during the relevant time period, at which time Defendants were engaged in business activities in the state of Pennsylvania.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in this District and because Defendants' headquarters are located within this District and they transact business and/or have agents within this District and have intentionally availed themselves of the laws and markets within this District.

## COMMON FACTUAL ALLEGATIONS

24.    Regulation D was implemented by the federal government to balance the interests of banking customers in accessing their money and the bank's interest in maintaining an appropriate reserve.  Regulation D accomplishes this balance by mandating that banks impose a fee and/or change the designation of the account, when a customer exceeds the Transaction Limit, as described herein.

25.    Until April 24, 2020, to ensure they maintained sufficient reserves, banks were required to limit *convenient transfers* from savings accounts to no more than six transfers per month.  *See 12 C.F.R. § 204.2(d)(2)*, Effective: June 27, 2013 to April 23, 2020.  Once the customer initiates more than six *convenient transfers*, Regulation D requires the bank to either impose a fee or reclassify the account.  12 C.F.R. §§ 204.2(d) and 204.133.

26.    Examples of *convenient transfers* are transfers to another account (including a transaction [checking] account) of the depositor at the same institution or to a third party by means of a preauthorized or automatic transfer, or telephonic (including data transmission) agreement, order or instruction, or by check, draft,

debit card, or similar order made by the depositor and payable to third parties. A preauthorized transfer includes any arrangement by the depository institution to pay a third party from the account of a depositor upon written or oral instruction (including an order received through an automated clearing house (ACH)) or any arrangement by a depository institution to pay a third party from the account of the depositor at a predetermined time or on a fixed schedule. *See 12 C.F.R. § 204.2(d)(2)*, Effective: June 27, 2013 to April 23, 2020.

27.    On April 24, 2020, *12 C.F.R. § 204.2(d)(2)* was amended to remove the mandatory six *convenient transfers* per month limit to make it easier for banking customers to access their money during the Covid-19 pandemic.[2] This amendment provides banks with the ability to choose whether to continue charging customers fees for *convenient transfers* in excess of the Transaction Limit.

28.    Defendants chose to continue charging their customers for accessing their money.

29.    However, *12 C.F.R. § 204.2(d)(2)* does not permit the counting of *inconvenient transfers* from savings accounts toward the Transaction Limit. *See 12 C.F.R. § 204.2(d)(2)*, Effective: June 27, 2013 to April 23, 2020 and Guidance.

---

[2] *https://www.federalreserve.gov/newsevents/pressreleases/bcreg20200424a.htm*

30.     *Inconvenient transfers* include transfers of funds from a savings account to another account of the same depositor at the same institution and withdrawals (payments directly to the depositor) from the savings account when such transfers or withdrawals are made by mail, messenger, automated teller machines (hereafter "ATM"), or in person or when such withdrawals are made by telephone (via check mailed to the depositor) regardless of the number of such transfers or withdrawals per month. *See 12 C.F.R. § 204.2(d)(2)*, Effective: June 27, 2013 to April 23, 2020.  Pursuant to the Guidance, *inconvenient transfers* do not count toward the Transaction Limit from a savings account and are unlimited.  *Id*.

31.     Yet, Defendants improperly and illegally count *inconvenient transfers*, such as those from ATMs, from certain customers' savings accounts, toward the Transaction Limit, in clear violation of federal law.  *See 12 C.F.R. § 204.2(d)(2)*, Effective: June 27, 2013 to April 23, 2020.

32.     Defendants state in their *Welcome to C & N* brochure, regarding its "Key Savings" accounts: "$2.00 per withdrawal charge is assessed on all withdrawals over 6 per calendar month." (Attached hereto as Exhibit "A").  As such, Defendants impair their customers' ability to recognize that it is improperly charging them fees in violation of federal banking regulations.  Defendants obfuscate and omit the distinction between *convenient* and *inconvenient transfers* and the legal ramifications thereof in their customer documents.  Defendants either knew or

10

should have known that their customers would be misled and/or confused regarding which types of transactions would be subject to fees thereby causing financial harm to their customers.

33.    Defendants reiterate their misleading and unlawful business practice in its *Key Savings Disclosure*, which is found in its *Welcome to C & N* brochure, by stating: "[w]ithdrawals are limited to six (6) per calendar month.  A $2.00 per withdrawal charge is assessed on all withdrawals over 6 per calendar month." (See Exhibit A).  As such, Defendants mislead their customers regarding which types of transactions would be subject to fees.

34.    In the same document, Defendants recognize the financial damage they inflict on Plaintiff and putative Class Members when they state that "fees may reduce earning on this account." In making this statement, Defendants are acknowledging that by charging fees they are hindering their customers' ability to maximize their earning potential and by unlawfully counting *inconvenient transfers,* as described herein, Defendants are causing harm to customers as their earning ability has been reduced.

35.    Despite, Defendants' unlawful business practice as to their customers Key Savings accounts, Defendants chose to comply with Regulation D when it comes to their premium Super Money Fund account. In the *Welcome to C & N* brochure, the section regarding Super Money Fund account states: "Federal

11

Regulations limit the number of checks and withdrawals NOT made in person, by mail, or through an automated teller machine to 6 per calendar month on this account. Withdrawals/checks are counted for the calendar month in which they clear the account. If you are over the federally regulated limit three (3) times in a rolling twelve-month period your account will be changed or closed. For all checks and withdrawals that are NOT made in person, by mail, or through an automated teller machine that exceed 6 per calendar month there will be a $2.00 excess per check/withdrawal fee plus an $8.00 monthly maintenance fee, except for Internet Banking transfers which will have no charge. Withdrawals/checks are counted in the calendar month in which they clear the account."

36.    As to Defendants' Super Money Funds accounts, which have higher daily minimums, earn interest monthly instead of quarterly, and have a tiered interest rate calculation, Defendants seemingly acknowledge and abide by Regulation D in terms of not counting and charging customers for *inconvenient transfers*, yet Defendants unlawfully charge fees on their Key Savings accounts for those same transfers in violation of Regulation D.

37.    Upon information and belief, Defendants also unlawfully charge for *inconvenient transfers*, as described herein, on their Youth Key Savings accounts as the language contained in the *Welcome to C & N* brochure is identical as to the

"[w]ithdrawals are limited to six (6) per calendar month.  A $2.00 per withdrawal charge is assessed on all withdrawals over 6 per calendar month" provision.

38.    Pursuant to 13 Pa.C.S.A. § 1304, every contract in Pennsylvania pursuant to the UCC must be performed in good faith.

39.    Defendants committed bad faith by improperly and illegally counting *inconvenient transfers*, such as those from ATMs, from their customers' savings accounts, toward the Transaction Limit, and then charging a $2.00 dollar fee for each transaction that exceeded the Transaction Limit, in clear violation of federal law.

40.    Plaintiff was charged improper and unlawful fees for banking services because of Defendants' unfair and deceptive acts and practices.  He would not have enrolled in Defendants' savings account but for their false representations.  Had Plaintiff known that Defendants would commit bad faith and arbitrarily set their fee schedule inconsistent with the contract's terms, Plaintiff would not have enrolled in Defendants' savings account.  Had Plaintiff known that Defendants would purposefully refuse to abide by federal regulations, he would not have enrolled in Defendants' savings account.

41.    Instead, and contrary to reasonable consumer expectation, Defendants used their unlawful fees as a pure profit center by overcharging Plaintiff and putative Class Members.

13

## PLAINTIFF SMITH'S FACTUAL ALLEGATIONS

42.    At all times relevant hereto, Plaintiff Smith and putative Class Members maintained savings accounts with Defendants as defined by *12 C.F.R. § 204.2(d)(1) & (2)*.

43.    Plaintiff Smith opened a Key Savings account with Defendants on January 7, 2020.  Since Plaintiff opened his savings account, Defendants have improperly charged him $216.00 as a result of its unlawful practice of counting *inconvenient transfers* toward the Transaction Limit from Plaintiff's account.

44.    Plaintiff accessed his money primarily by making withdrawals from an ATM, which is an *inconvenient transfer* under the banking regulations.  According to the Guidance, these ATM withdrawals **should not** have been counted toward the Transaction Limit.

45.    Yet, Defendants have violated and continue to violate *12 C.F.R. § 204.2(d)(1) & (2)* by counting Plaintiff's and the putative Class's *inconvenient transfers* from their savings accounts toward the Transaction Limit in clear violation of federal law.

46.    Defendants improperly and unlawfully charge Plaintiff and the putative Class Members $2.00 for each transfer from their savings accounts in excess of the Transaction Limit they still enforce regardless of whether the transfers are *convenient* or *inconvenient transfers*.

14

47.    The following chart is a breakdown of the improper and unlawful charges Defendants imposed upon Plaintiff Smith:

| Statement Start Date | Total number of withdrawals /transfers | Number of convenient withdrawals /transfers | Number of inconvenient withdrawals /transfers | Total fees charged for withdrawals /transfers | Total Over-charges |
|---|---|---|---|---|---|
| January 7, 2020 | 3 | 1 | 2 | $0.00 | $0.00 |
| February 1, 2020 | 12 | 3 | 9 | $12.00 | $12.00 |
| March 1, 2020 | 11 | 3 | 8 | $10.00 | $10.00 |
| April 1, 2020 | 5 | 4 | 1 | $0.00 | $0.00 |
| May 1, 2020 | 8 | 4 | 4 | $4.00 | $4.00 |
| June 1, 2020 | 13 | 3 | 10 | $14.00 | $14.00 |
| July 1, 2020 | 16 | 3 | 13 | $20.00 | $20.00 |
| August 1, 2020 | 14 | 4 | 10 | $16.00 | $16.00 |
| September 1, 2020 | 20 | 8 | 12 | $28.00 | $24.00 |
| October 1, 2020 | 18 | 8 | 10 | $24.00 | $20.00 |
| November 1, 2020 | 19 | 8 | 11 | $26.00 | $22.00 |
| December 1, 2020 | 14 | 6 | 8 | $16.00 | $16.00 |
| January 1, 2021 | 8 | 2 | 6 | $4.00 | $4.00 |
| February 1, 2021 | 10 | 7 | 3 | $8.00 | $6.00 |
| March 1, 2021 | 12 | 4 | 8 | $12.00 | $12.00 |
| April 1, 2021 | 16 | 9 | 7 | $20.00 | $14.00 |
| May 1, 2021 | 11 | 6 | 5 | $10.00 | $10.00 |
| June 1, 2021 | 12 | 5 | 7 | $12.00 | $12.00 |
| **Totals:** | **222** | **88** | **134** | **$236.00** | **$216.00** |

48.    The chart shows that Plaintiff Smith was charged $216.00 in unlawful fees imposed by Defendants.

1762474-1
1763183-1

49.    After numerous months of being charged what Plaintiff believed to be excessive fees, he inquired with Defendants to get an explanation as to the reason for the charging of the fees.

50.    Plaintiff contacted Defendants' Customer Service line multiple times to question the fees that appeared on his statements.    Each time, Defendants' representatives failed to provide an explanation for the improper fees.

51.    Defendants' unfair and deceptive acts and practices, and their misstatements and omissions, caused injury to Plaintiff and other reasonable customers because they believed that by enrolling in Defendants' savings account, Defendants would abide by all regulations and laws and accurately disclose to Plaintiff and putative Class Members the amount of fees they would be charged for banking transactions.

52.    Instead, Defendants' customers are charged improper banking fees. And Defendants intentionally fail to disclose the true nature of their fees – a material fact – to their customers because no reasonable consumer, including Plaintiff, who knows the truth about Defendants' improper fees would choose Defendants as a bank and savings account provider.

53.    Defendants know their fees are unconscionable, and the misrepresentations and omissions they make about their fees were made for the sole purpose of inducing customers to sign up for and remain enrolled in Defendants'

savings accounts.  Defendants reap outrageous and unlawful profits to the direct detriment of customers without regard to the consequences their improper fees cause such customers.  As such, Defendants acted with actual malice or with wanton and willful disregard for customers' well-being.

54.    As a direct result of Defendants' misrepresentations and omissions, Plaintiff and members of the putative Class paid unlawful fees related to their savings accounts and therefore suffered common injuries, for which damages can be calculated on the merits.

55.    Had Plaintiff known Defendants were going to charge him improper and unlawful fees, Plaintiff would not have enrolled in Defendants' savings account.

56.    Had Plaintiff known that Defendants were going to improperly charge him for *inconvenient transfers* from his savings account, Plaintiff would not have enrolled in Defendants' savings account.

57.    Defendants caused Plaintiff to incur financial losses, in the form of fees and lost interest on those fees, when it improperly charged him for *inconvenient transfers* from his savings account.

58.    Defendants' violations of 73 PS. § 201-1 *et seq*. and the common law are applicable to all members of the putative Class, and Plaintiff is entitled to have Defendants enjoined from engaging in illegal and deceptive conduct in the future.

17

## CLASS ACTION ALLEGATIONS

59.     Plaintiff hereby incorporates each of the foregoing paragraphs as though they were set forth here in their entirety.

60.     Pursuant to the provisions of *Federal Rules of Civil Procedure 23(a) & 23(b)*, Plaintiff brings this action on behalf of himself and the following class (the "Class"):

> ### MULTI-STATE CLASS:
>
> All persons who incurred a fee premised on excess transactions from their savings accounts where an *inconvenient transfer*/withdrawal caused them to exceed Defendants' monthly transaction limit and where said fee was not previously reversed, refunded, or returned during the class period.

61.     In the alternative to the Multi-State Class, Plaintiff brings this action on behalf of himself and the Pennsylvania Subclass (the "Pennsylvania Subclass")

> ### PENNSYLVANIA SUBCLASS:
>
> All persons in Pennsylvania who incurred a fee premised on excess transactions from their savings accounts where an inconvenient transfer/withdrawal caused them to exceed Defendants' monthly transaction limit and where said fee was not previously reversed, refunded, or returned during the class period.

62.     Unless otherwise noted below, the Multi-State Class and Pennsylvania Subclass will be collectively referred to herein as the "Class."

18

63.    Excluded from the Class are Defendants themselves, any entity in which Defendants have controlling interests, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns; and any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

64.    Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

65.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Rule 23 of the Federal Rule of Civil Procedure and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

66.    Plaintiff reserves the right to amend the Class definition based on information learned through discovery.

67.    **Numerosity - *Fed. R. Civ. P. 23(a)(1)***: Consistent with *Rule 23(a)(1)*, the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of class members is unknown to Plaintiff at this time, it is believed and therefore averred that Defendants

have at least thousands of customers who have savings accounts with Defendants and whom Defendants improperly charged fees for *inconvenient transfers* from their savings accounts during the class period. Furthermore, the members of the Class can be readily identified through Defendants' books and records.

68.  **Commonality and Predominance - *Fed. R. Civ. P. 23(a)(2)*** and ***(b)(3)***: This action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include, but are not limited to:

a.  Whether Defendants engaged in the conduct alleged herein;

b.  Whether Defendants are violating federal regulations;

c.  Whether Defendants breached their contracts with Plaintiff and the Class;

d.  Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 - 201-9.2;

e.  Whether Plaintiff and the Class are entitled to restitution for the value of their improperly assessed fees;

f.  Whether Plaintiff and the Class are entitled to restitution for the interest they lost as a result of the improperly assessed fees;

g.  Whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit;

h.  Whether Defendants should be enjoined from charging their customers for *inconvenient transfers* in excess of the Transaction Limit they make from their savings accounts.

i.   Whether Defendants have been unjustly enriched at the expense of Plaintiff and the Class; and

j.   Whether Plaintiff and the Class are entitled to injunctive relief.

69.   **Typicality - *Fed. R. Civ. P. 23(a)(3)***: Plaintiff's claims are typical of other putative Class Members' claims because Defendants imposed the same uniform policy of improperly counting *inconvenient transfers* toward the Transaction Limit and imposing illegal fees on Plaintiff and putative Class Members.  Plaintiff and putative Class Members were subjected to the same allegedly unlawful conduct and were damaged in a similar way.

70.   **Adequacy - *Fed. R. Civ. P. 23(a)(4)***:  Consistent with *Rule 23(a)(4)*, Plaintiff will fairly and adequately represent the Class.  Plaintiff has the best interests of the members of the Class in mind.  The best interests of the Plaintiff are aligned with the best interests of the putative Class Members such that actions will benefit or harm them at the same time.  Plaintiff has no conflicts of interest with the Class.  Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in consumer protection claims.  Plaintiff intends to vigorously prosecute this case.

71.   **Superiority - *Fed. R. Civ. P. 23(b)(3)***: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the Class is

21

impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some could afford to litigate claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

72.    The Class may be certified pursuant to *F.R.C.P. 23(b)(2)* because Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by Plaintiff and the Class.

73.    The Class may also be certified pursuant to *F.R.C.P. 23 (b)(3)* because questions of law and fact common to members of the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

74.    The claims asserted herein are applicable to Plaintiff and members of the Class.

22

75.    The Class is ascertainable, and adequate notice can be given to Class Members directly using information maintained in Defendants' records or, if necessary, through notice by publication.

76.    Damages may be calculated from the data maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized.

## CAUSES OF ACTION

### COUNT I
**BREACH OF CONTRACT**
**(On behalf of Plaintiff and the Class)**

77.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

78.    Defendants entered into valid and enforceable agreements with Plaintiff and the Putative Class Members, which included terms relating to the fees to be charged from Plaintiff and the Class's savings accounts for banking transactions.

79.    Specifically, upon the opening of a saving account, Defendants issue Plaintiff and Class Members a *Welcome to C & N* brochure including the *Key Savings Disclosure,* and other applicable disclosures such as the *Online Banking Agreement and Electronic Fund Transfer Act Disclosure* which dictates the policies and terms and conditions of the savings account, these documents form the contract between the parties. *See* Exhibits A-B.

80.    Defendants breached their agreements with Plaintiff and the putative Class Members by charging unlawful fees that did not meet the contractual obligation to accurately articulate the nature of banking fees charged to Plaintiff and putative Class Members regarding transactions.   Instead, Defendants charged unlawful arbitrary rates that were divorced from the fees allowable under Regulation D.

81.    As detailed herein, Regulation D is the law governing bank savings accounts, including statutory requirements dictating what and when fees are allowed to be applied and therefore are and were subsumed into the Defendants' *Welcome to C & N* brochure, *Key Savings Disclosure,* and other applicable disclosures as if expressly referred to or incorporated.

82.    The contract between Defendants and Plaintiff and putative Class Members incorporates the statutory language of Regulation D: "Much of our relationship with our deposit customers is regulated by state and federal law" and "[t]his Agreement is also subject to applicable federal laws and the laws of the State of Pennsylvania for Citizens & Northern Bank customers." *See* Exhibit B. Thus, these statutory requirements were incorporated into the contract both by operation of law and the terms of the contract itself.

83.    Defendants breached the contract with Plaintiff and putative Class Members by improperly and illegally counting *inconvenient transfers*, such as those

24

from ATMs, from their customers' savings accounts, toward the Transaction Limit, and then charging a $2.00 dollar fee for each transaction that exceeded the Transaction Limit, in clear violation of federal law.

84.    Moreover, all contracts contain an implied covenant of good faith and fair dealing, including Plaintiff's and putative Class Members' contracts with Defendants. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms. Under this covenant, we are not to suppose that one party is put at the mercy of the other but will read in any necessary conditions to ensure a mutuality of obligation under fair terms.

85.    Defendants had a contractual obligation to exercise good faith and fair dealing in its implementation of the contract.  Defendants collected impermissible and unlawful fees under the contract.

86.    Defendants do not have unfettered discretion to charge banking transaction fees.

87.    Here, Defendants have failed to satisfy their contractual obligation. Instead of setting their fees in good faith in accordance with Regulation D, Defendants have unilaterally imposed exorbitant, unlawful, and undisclosed fees on their customers, including Plaintiff and the members of the putative Class. In actuality, Defendants' rates bear no reasonable relationship to the fees proscribed by Regulation D. While Defendants represent that their fees comply with Regulation D,

25

in reality, Defendants' unlawful fees far exceed the fees allowed under Regulation D.

88.    Under the covenant of good faith and fair dealing, Defendants should have charged customers like Plaintiff reasonable fees, as prescribed by Regulation D, as promised.  All monies paid above the reasonable amount of fees should be restored to the putative Class as damages.

89.    Defendants breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising their unilateral fee-setting discretion to charge unlawful fees and frustrate Plaintiff's and other putative Class Members' reasonable expectations that the fees imposed would be commensurate with the fees allowed under Regulation D.

90.    Defendants' performance of their discretionary functions under the contract, as alleged herein to maximize their revenue from their banking fees, impedes the right of Plaintiff and other members of the putative Class to receive benefits that they reasonably expected to receive under the contract.

91.    Defendants acted in bad faith by abusing their discretion and intentionally hiding that their fees were not in accord with Regulation D – vital information that is material to Plaintiff's and the putative Class Members' decisions to enroll in and remain enrolled in Defendants' savings accounts – for the purpose of ensuring that Plaintiff and the putative Class Members continued to perform under

26

the contract even though Defendants knew their fees would never comply with Regulation D as they promised.

92.    As such, Defendants charged Plaintiff and the putative Class unlawful fees and in doing so acted in bad faith or with improper motive.

93.    Defendants' breach resulted in Defendants taking monies from Plaintiff and putative Class Members without cause and keeping those monies for an extended period of time.  In addition to losing the actual value of said monies at time of payment, Plaintiff and putative Class Members also lost the ability to earn interest, especially as a result of the monies being taken from savings accounts, and/or investment income on the monies.  This interest and/or investment income would have compounded over the years that Defendants unlawfully withheld the funds.

94.    Further, Defendants have not compensated Plaintiff and putative Class Members for the harm caused by lost interest and/or investment income.

95.    Justice requires that Defendants provide any benefits they earned as a result of the breach of contract and improper charging of fees including investment and/or interest income to Plaintiff and putative Class Members.

## **COUNT II**

**UNJUST ENRICHMENT**
**(In the Alternative to Count I)**
**(On behalf of Plaintiff and the Class)**

96.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 76 as if fully set forth herein.

97.     If the Court finds no contract existed between Plaintiff and Defendants, Plaintiff brings this claim for unjust enrichment on behalf of himself and the putative Class.

98.     Plaintiff and putative Class Members have conferred a benefit on the Defendants as a result of Defendants improperly assessing fees and collecting millions of dollars from Plaintiff and putative Class Members. Defendants have failed to refund Plaintiff and putative Class Members the improper fees they have assessed and/or the interest Defendants have earned on the money. As a result of those actions, Defendants were and continue to be unjustly enriched at the expense of Plaintiff and putative Class Members.

99.     Plaintiff and putative Class Members' detriment and Defendants' enrichment is the direct result of Defendants' illegal charging and collecting of the fees described herein.

100.    Defendants have profited from their unlawful, unfair, and illegal practice at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain benefits, interest earned, earned income, and any other benefit obtained as a result of the conduct described herein.

28

101.    If Defendants do not refund the improperly taken fees and any increased value to Plaintiff and putative Class Members from whom they collected the fees, in proportion to the amount paid, then Defendants have profited from their unlawful actions.

102.    Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment.

103.    Justice requires that Defendants provide full refunds and interest income to Plaintiff and putative Class Members.

104.    Plaintiff and members of the putative Class have no adequate remedy at law.

## <u>COUNT III</u>

### VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL"), 73 P.S. § 201-1, *et seq*.
### (On behalf of Plaintiff and the Pennsylvania Subclass)

105.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 104 as if fully set forth herein.

106.    Plaintiff brings this Count on behalf of himself and the Pennsylvania Subclass (the "Subclass").

107.    Plaintiff and putative Subclass Members and Defendant are "Person(s)" as defined by 73 P.S. § 201-2(2).

29

108.   The savings account at issue herein that the parties contracted for is primarily for personal, family, and household use of Plaintiff as the account is a personal savings account.

109.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prescribes a violation as, *inter alia,* engaging in any "unfair and deceptive acts or practices" either at, prior to, or subsequent to a consumer transaction.

110.   The actions of Defendants, as described herein, constitute unfair or deceptive acts and practices under the UTPCPL, specifically 73 P.S. § 201-2(4)(xxi), which states "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

111.   Defendants had a duty under the law, including Regulation D, to accurately disclose to customers the fees that would be charged to the savings account and what type of transactions are included toward the six-transfers-per-month limit as described herein.

112.   Defendants had a duty under the law, including Regulation D, to articulate the correct transaction language, Defendants' disclosures are silent as to *convenient* and *inconvenient transfers* and the differences between them.

113.   Defendants' disclosure language specifically includes reference to the fee schedule as part of the savings account agreement entered into by the parties, yet

when one looks for the fee schedule on Defendants' website, you are directed to contact customer service.[3] Clearly, Defendants are intentionally making it difficult to determine exactly what fees apply to the savings account and how those fees are calculated.

114.   Plaintiff and putative Subclass Members justifiably relied upon Defendants' expertise and professional reputation to properly inform Plaintiff and putative Subclass Members of the fees that would be assessed and to follow the law and regulations including *12 C.F.R. § 204.2(d)(2)* regarding the assessment of fees as to the savings account at issue herein.

115.   Defendants' failure to articulate the correct transaction and fee language, as described herein, was designed to result in confusion and misunderstanding as to the assessment of fees which resulted in financial harm to the Plaintiff and the putative Subclass Members.

116.   Plaintiff and the other members of the putative Subclass entered into savings accounts with Defendants for personal, family, or household use and suffered ascertainable losses as a direct and proximate result of Defendants' actions in violation of the UTPCPL.

---

[3] https://www.cnbankpa.com/Personal/Bank/Banking-FAQs

31

117.   As a consequence of Defendants' wrongful actions, Plaintiff and the other members of the putative Subclass suffered an ascertainable loss of monies based on the excessive and unlawful fees they were charged.

118.   Plaintiff and the other members of the putative Subclass suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have entered into savings accounts with Defendants if the true facts concerning their fees had been known.

119.   Because    of    Defendants'    unlawful,    deceptive,    unfair,    and unconscionable trade practices, Plaintiff and the putative Subclass Members have suffered injuries and damages in an amount to be determined at trial. Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, this Court has the power to enjoin Defendants' conduct. Unless enjoined by this Court, Defendants will continue their unlawful practice of charging excessive undisclosed fees to their customers.

120.   Furthermore, Plaintiff and putative Subclass Members are entitled to up to three times their actual damages and an award of attorney fees and costs pursuant to 73 P.S. § 201-9.2(a).

## **PRAYER FOR RELIEF**

121.   Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Defendants that:

1762474-1
1763183-1

A.    Determines that this matter may proceed as a class action and certifying the Class;

B.    Appoints Plaintiff as representative of the Class and appoints Plaintiff's counsel as Class Counsel;

C.    Awards Plaintiff and the putative Class Members compensatory and consequential damages, as set forth above;

D.    Awards full restitution of all funds acquired and subsequently earned from Defendants' unlawful collection of fees, including disgorgement of profits;

E.    Awards pre-judgement and post-judgment interest, as provided by law or equity;

F.    Awards of attorney's fees and costs; and

G.    Such other relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

August 11, 2021                              Respectfully Submitted:

Frederick Law Group, PLLC

 /s/ Troy M. Frederick
Troy M. Frederick, Esquire
PA 207461
Beth A. Frederick, Esquire*
PA 308628

836 Philadelphia Street
Indiana, PA  15701
Phone: (724) 471-2056
Facsimile: (724) 801-8358
Email: *TMF@FrederickLG.com*
Email: *BAF@FrederickLG.com*


Keith T. Vernon, Esquire*
DC 484246
Andrew W. Knox, Esquire*
PA 306899
Kathleen M. Vermilion, Esquire*
PA 323283
**TIMONEY KNOX, LLP**
400 Maryland Drive
Fort Washington, PA  19034
Phone: (215) 646-6000
Facsimile: (215) 591-8246
Email: *kvernon@timoneyknox.com*
Email: *aknox@timoneyknox.com*
Email: *kvermilion@timoneyknox.com*


Jonathan Shub, Esquire
PA 53965
Kevin Laukaitis, Esquire
PA 321670
**SHUB LAW FIRM LLC**
134 Kings Highway East, 2nd Floor
Haddonfield, NJ  08033
Tel: (610) 453-6551
Email: *jshub@shublawyers.com*
Email: *klaukaitis@shublawyers.com*


*Counsel intend to move for *pro hac vice* admission

1762474-1
1763183-1